## John Rabb et al. *v.* C. P. McKinnie.

McK. recovered a judgment on the 23d of January, 1838, in the circuit court of Warren county, against G. W. H., who died in the year 1847, having made his will, by which he bequeathed to S. H. and J. G. H., his only children and heirs at law, then minors, a considerable estate in land and slaves; and appointed J. R. his executor, who proved the will in the probate court of Warren county, and took out letters testamentary, returning an inventory consisting of about $600 worth of personal property, the whole of which was expended by J. R. in the payment of debts and expenses, leaving McK.'s judgment unpaid.   S. H., the father of G. W. H., died in 1841, possessed of a large estate, which he devised to the children

Rabb et al. *v.* McKinnie.

of R. W.; but when the purported will of said S. H. was presented for probate, G. W. H., who was his only child and heir at law, contested its validity, and upon an issue directed to the circuit court, it was determined that the instrument of writing offered to probate, was·not the will of the decedent, (S. H.,) and that he had died intestate; and the case was brought to this court by writ of error, pending which a compromise was made between said G. W. H. and R. W., who acted as the next friend of the devisees under the will of S. H. In pursuance of which compromise, a bill was filed in the superior court of chancery, and a decree entered by consent of parties, intended to carry out the compromise, when, pursuant to the said decree, G. W. H., and R., the administrator of S. H., executed a deed of conveyance of the whole estate of which the deceased was seized and possessed, to L. and G. in trust, which trusts were specially declared in the deed; and among these, L. and G., the trustees, were to hold the said property, one moiety for the use and benefit of S. H. and J. G. H., the children and heirs at law of G. W. H., and the other moiety for the children then living of R. W., and the joint issue of said R. W. and S. his wife. McK. in his bill alleges further, that the deed executed for said property was *voluntary and without consideration, and void as to* his claim; and in the mean time L. and G. resigned their trusts, and other trustees were appointed in their place, who were made codefendants; and a general demurrer was filed to the bill, which was overruled. *Held,* that the one moiety of the property conveyed and held in trust for the use and benefit of the children of G. W. H., should be made liable for the payment of McK.'s judgment, and the decree of the court below was correct.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The facts of the case are contained in the opinion of the court.

*T. J.* and *T. A. R. Wharton* for appellants.

*A. Burwell* for appellee.

Mr. Chief Justice SMITH delivered the opinion of the court.

Clement P. McKinnie recovered a judgment in the Warren circuit court, against Geo. W. Hillson, on the 23d of January, 1838. Hillson died in 1847, having made his will, by which he bequeathed to Silas and John G. Hillson, his only children and heirs at law, a considerable estate in land and slaves, and appointed John Rabb his executor. Rabb proved the will in the

court of probates of Warren county, took out letters testamentary, and returned an inventory consisting of some five or six hundred dollars' worth of personal property, the whole of which was expended by Rabb in the payment of debts and expenses, leaving McKinnie's judgment unpaid.

Silas Hillson died in 1841, possessed of a large estate, consisting of land and slaves, 'which he devised to the children of Richard Wells. When the paper which purported to be the will of the said Silas Hillson was presented for probate, Geo. W. Hillson, who was his only child and heir at law, appeared and contested it; whereupon an issue was directed to the circuit of Warren county, in which it was tried, and the result was a verdict declaring the paper not to be the will of the decedent, and judgment rendered thereon. In regard to this transaction, the precise language of the bill is this, " the said issue was tried, and the verdict of the jury and the judgment of the court thereon rendered, by which it was determined that said Silas Hillson had died intestate." A writ of error was sued out to this judgment, by which the cause was removed into this court. Pending the writ of error, a compromise was made between Geo. W. Hillson and Richard Wells, who was the father, and acted in the matter as the next friend of the devisees under the will of Silas Hillson. A bill was filed in the superior court of chancery, and a decree was entered by consent based upon the compromise, and intended to carry it into effect. In execution of the compromise, and pursuant to the said decree, George W. Hillson, and John Rabb, the administrator of Silas Hillson, executed a deed of conveyance of the whole estate, real and personal, of which Silas Hillson died seized and possessed, to William Laughlin and John I. Guion, to hold the said property in trust. The trusts were specifically declared in the deed. Amongst these, it was declared that Laughlin and Guion were to hold the said property, one moiety for the use and benefit of Silas and John G. Hillson, the children and heirs at law of Geo. W. Hillson, and the other for the children then living of Richard Wells, and the joint issue of the said Wells and his wife Sarah. The deed executed by Laughlin and Guion was

alleged to be voluntary, and without consideration, and void as to the complainant.

Laughlin and Guion resigned their trusts under the said deed, and by a decree of the superior court of chancery, James Roach and James M. Brabston were appointed trustees in their stead.    Roach and Brabston were made defendants by an amended bill, and, with Richard Wells, demurred.    The demurrer was overruled, and the demurrants prayed an appeal to this court.

The only question arising upon this state of facts, which it is material to notice, is whether George W. Hillson acquired an interest in the estate of Silas Hillson, which could be subjected to the payment of complainant's judgment.    Hence it is unnecessary to notice the decree based upon the compromise, and designed to make it effectual.

It is said first, in behalf of the appellants, that the property was never liable to the complainant's judgment, for the reason that the making and publication of his will by Silas Hillson, prevented an investiture of title in George W. Hillson to the property of the testator.

In the next place it is insisted, that if an investiture of title in the heir at law, was prevented, the verdict of the jury could have had no effect upon the rights of the parties, as the judgment rendered thereon was void.

And in the third place it is contended, if the verdict and judgment on the issue of *devisavit vel non* had the effect to set aside the will, so that the title would descend and vest in the heir, the appeal which was taken from the judgment suspended their operation, and hence that at the time the compromise was entered into, George W. Hillson held no interest in the property, which the deed of Rabb and himself affected to convey.

These positions may be conceded to the full extent maintained by counsel, and still the moiety of the property held in trust for the use and benefit of Hillson's children, Silas and John G., remain subject to the demand of his creditors.

Conceding, then, that these positions are maintainable, what is the true state of the case?    In ascertaining this, it is immaterial whether we look at the transaction from the point of view

9 *

in which the descent of the property and the investment of title in the heir is prevented by the execution of the will, or regard the effect of the judgment as completely suspended by the appeal. Upon either hypothesis, no interest in the devised property was vested in Hillson. He held but a claim, the value of which depended solely upon the judgment of this court on the appeal, and was based exclusively on the title which he set up as the heir at law. In a strict sense, it cannot be said that the title of the devisees under the will was a vested interest; but their claim, whatever it was, was in opposition to, and in nowise depended upon, that which Hillson asserted. The controversy then in progress between the parties, was a sufficient consideration as between them to sustain any fair contract made in reference to the property in litigation. Hence we see no objection to the validity of the compromise, as it affects the rights of the parties to it. But the claim of neither party arose out of that adjustment. To ascertain the true foundation of the title of the respective parties, we must go beyond that adjustment, as well as the deed of Rabb and Hillson ; and when we do so, we see that the rights of the devisees were based exclusively on the will, whereas the title of Hillson was founded on his asserted title, as the heir at law of the testator. In this view it is evident that the effect of the compromise, or rather the compromise itself, was nothing more than a recognition by the parties, to a limited extent, of their adverse claims. One of them said, " in consideration of the settlement of this controversy, I acknowledge your claim as devisees under the will of my ancestor, to one half of the disputed succession." The other, for the same consideration, said, " we admit that you are entitled to the other moiety as the heir at law." Hence it is evident that the deed of Rabb and Hillson, the compromise, cannot be considered the source or foundation of the right of the devisees, as such right existed prior to either. Hillson, in fact, neither at law nor in equity, was ever the owner of that part of the property which is held in trust for the devisees. It was never subject to the demands of his creditors. It would, therefore, be unjust to hold it liable, for the reason that it was embraced in in Rabb's and Hillson's deed to Laughlin and Guion.

The children and heirs of Hillson stand in no such attitude. The property conveyed by him for their use and benefit, was claimed by him as the heir of Silas Hillson; it was conceded to him as such, and he held and conveyed it in that character. The fact that Rabb joined in the conveyance, cannot have the least influence upon the rights of any of the parties. His deed could pass only such interest as he held as administrator, and which, as such, it was competent for him to convey. As administrator, he held the legal title to the personal property of his intestate in trust for the creditors and for the heir. He conveyed with the consent of the latter. His conveyance was void as to the creditors, and as to the heir can only be regarded as an act of distribution. The deed was voluntary, and without any sufficient consideration to support it against creditors.

It follows, hence, that one moiety of the property conveyed and which is held in trust for the use and benefit of the children of George W. Hillson, should be made liable for the payment of the complainant's judgment. The decree of the court was, therefore, correct.

Let the decree be affirmed.